893 F.2d 1368
 282 U.S.App.D.C. 219
 The COMMONWEALTH OF MASSACHUSETTS, Petitioner,
v.
INTERSTATE COMMERCE COMMISSION and United States of America,
Respondents,
Association of Amerian Railroads, Intervenor.
Patrick W. SIMMONS, Petitioner,
v.
INTERSTATE COMMERCE COMMISSION and United States of America,
Respondents,
Association of American Railroads, Intervenor.
 Nos. 88-1880, 88-1884.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Nov. 6, 1989.
Decided Jan. 16, 1990.
 
 Petitions for Review of an Order of the Interstate Commerce commission.
 Michael F. McBride, Sp. Asst. Atty. Gen. of the Com. of Mass., Washington, D.C., with whom Paul H. Falon, Washington, D.C., and Judith L. Traux were on the brief for petitioner, the Com. of Mass. in No. 88-1880.
 Gordon MacDougall, Washington, D.C., for petitioner, Patrick W. Simmons in No. 88-1884.
 Charles Alan Stark, Atty., I.C.C., with whom James F. Rill, Asst. Atty. Gen., Catherine G. O'Sullivan and John P. Fonte, Attys., Dept. of Justice, Washington, D.C., Robert S. Burk, Gen. Counsel, and Ellen D. Hanson, Associate Gen. Counsel, I.C.C., were on the brief for respondents in both cases. Marion L. Jetton, Atty., Dept. of Justice, Washington, D.C., also entered an appearance for U.S. of America.
 Kenneth P. Kolson, Vienna, Va., entered an appearance for intervenor, Ass'n of American Railroads in both cases.
 Before WILLIAMS and SENTELLE, Circuit Judges; and ROBINSON, Senior Circuit Judge.
 Opinion for the Court filed by Circuit Judge SENTELLE.
 SENTELLE, Circuit Judge:
 
 
 1
 The Commonwealth of Massachusetts and Patrick W. Simmons petition for review of an order of the Interstate Commerce Commission (the "ICC" or the "Commission") in this consolidated case. Massachusetts challenges the Commission's order in Ex Parte No. 274 (Sub-No. 11A), Abandonment Regulations--Costing (Implementation of the Railroad Accounting Principles Board Findings), 5 I.C.C.2d 123 (1988), as irrational because the method adopted for calculating opportunity cost in abandonment proceedings, which continues to be based on the net liquidation value ("NLV") of the line, allows results Massachusetts claims are inconsistent with the Commission's standards for revenue adequacy and because, Massachusetts asserts, the use of the nominal rather than the real cost of capital double counts for inflation. Because we find that Massachusetts' challenge to the use of NLV is untimely, we need not address the merits of its complaints. On the asserted double count, Massachusetts' comments to the Commission demonstrate that the Commission's action was within its discretion.
 
 
 2
 Petitioner Simmons, Illinois Legislative Director for United Transportation Union, asserts that the ICC unlawfully relied on the authority of the Railroad Accounting Principles Board (the "RAPB") in its rulemaking. We find that the Commission relied on its own authority to promulgate the rule under review and that Simmons' objection to the role of the RAPB is meritless.
 
 
 3
 We affirm the decision of the ICC.
 
 I. BACKGROUND
 
 4
 The RAPB was created by the Staggers Rail Act of 1980, Pub.L. No. 96-448, Title III, Sec. 302(a), 94 Stat.1935 (1980) (codified at 49 U.S.C. Secs. 11,161 & 11,162), to develop "principles governing the determination of economically accurate railroad costs...." 49 U.S.C. Sec. 11,162(a). "Upon the establishment of cost accounting principles" the ICC is to "promulgate rules to implement and enforce such principles." Id. Sec. 11,163. The RAPB set forth its findings in its report Railroad Accounting Principles (1987). The ICC initiated the rulemaking under review to promulgate rules adopting the RAPB-developed modifications to abandonment practices, Abandonment Regulations, supra, 5 I.C.C.2d 123, slip op. at 1 (1988).
 
 
 5
 In May of 1988 the ICC issued a Notice of Proposed Rulemaking (the "Notice") on the use of opportunity cost in railroad line abandonment cases. 53 Fed.Reg. 17,234 (1988). In response to the recommendation of the RAPB, the Commission proposed, inter alia, changes to its accounting rules, 49 C.F.R. Part 1152, that would:
 
 
 6
 (1) use the nominal rather than the real cost of capital; and
 
 
 7
 (2) offset the effects of expected future inflation imbedded in the nominal cost of capital with a reduction in one-year projected holding gains.
 
 
 8
 Id. Both petitioners filed comments. The ICC adopted the revisions substantially as proposed. 53 Fed.Reg. 49,666 (1988).
 
 II. ANALYSIS
 A. Opportunity Cost Calculation
 
 9
 A rail carrier may not abandon a rail line unless the ICC finds that the public convenience and necessity require or permit the abandonment. 49 U.S.C. Sec. 10,903(a). In making abandonment decisions, the ICC considers the opportunity cost to the railroad associated with continuing to operate the line. 49 C.F.R. Sec. 1152.32(p) (1988). "Opportunity cost" refers to the economic loss suffered by the carrier by continuing its investment in the line rather than in a more profitable alternative investment. Ex Parte No. 274 (Sub-No. 3), Abandonment of Railroad Lines, 360 I.C.C. 571, 577 (1979), aff'd Farmland Indus. v. United States, 642 F.2d 208 (7th Cir.1981). Opportunity cost is calculated by multiplying its two components, the value of the line and the railroad's cost of capital. 49 C.F.R. Secs. 1152.32(p) & 1152.34 (1988); Illinois C.G.R.R., 363 I.C.C. 729, 732 (1980), aff'd sub nom. Ballard County Rail Users v. ICC, 665 F.2d 1043 (6th Cir.1981).
 
 
 10
 In its Notice of Proposed Rulemaking at issue here, the Commission proposed to implement changes in the calculation of the cost of capital component of the opportunity cost. Specifically, the Commission proposed to use the nominal rather than the real cost of capital. The nominal cost of capital is the cost of financing for the railroad expressed in market rates, not adjusted for inflation. The real cost of capital adjusts the nominal cost of capital to exclude that portion of the cost of funds attributable to expected future inflation. See Association of Amn. R.R. v. ICC, 846 F.2d 1465, 1473-74 (D.C.Cir.1988).
 
 
 11
 The Notice discussed only proposed changes to the cost of capital calculation. It did not mention, much less raise as an issue, the measure of the capital invested or the value of the rail line. Nevertheless, the comments of petitioner Commonwealth of Massachusetts were directed toward the valuation component of opportunity cost. Massachusetts urged the Commission to require the use of original cost less depreciation (book value or historical value) rather than net liquidation value as the measure of the value of the investment in the line. Likewise, Massachusetts' assertions before this Court that the Commission's decision is arbitrary and capricious because it allows results at variance with the Commission's revenue adequacy standards, Ex Parte No. 393 (Sub-No. 1), Standards for Railroad Revenue Adequacy, 3 I.C.C.2d 261 (1986), derive exclusively from the Commission's use of net liquidation value.
 
 
 12
 The Commission argues that Massachusetts' comments and its assertions here are beyond the scope of the Notice and that they constitute an impermissible collateral attack on long-settled ICC policy. We agree.
 
 
 13
 Massachusetts argues that the Commission by its Notice opened for review the entire calculation of opportunity cost. Despite Massachusetts' best efforts to cull references to the valuation method from the Notice, it gives absolutely no indication that the Commission contemplated or solicited comments on changing the valuation method. With respect to opportunity cost, the Notice addressed itself specifically and solely to the computation of the cost of capital and solicited comments only on the Commission's proposal to use instead of the real cost of capital, the nominal cost of capital with an offsetting reduction in projected one-year holding gains. Likewise, Massachusetts' request to interpret the Commission's call for comments on "any possible problems or issues associated with its [the proposed change in cost of capital] implementation," Abandonment Regulations, supra, 5 I.C.C.2d 123, slip op. at 5, as an invitation to also consider the asset valuation methodology is without merit. The Notice did not invite comment upon the valuation calculation.
 
 
 14
 The decision under review here did no more than what the Notice proposed. The Commission adopted new accounting rules for cost of capital determinations. The Commission's decision did not adopt any new valuation measure nor did it re-evaluate or repromulgate its existing valuation method.
 
 
 15
 The time for Massachusetts to attack the use of NLV or of opportunity cost generally has long passed. 28 U.S.C. Secs. 2321, 2342 and 2344 require that a party aggrieved by a final order of the Interstate Commerce Commission bring its petition within sixty days after entry of the order. Because the procedures challenged by Massachusetts were adopted far more than sixty days prior to the filing of its petition, this Court is without jurisdiction to hear the challenge. Natural Resources Defense Council v. NRC, 666 F.2d 595, 602 (D.C.Cir.1981); Asphalt Roofing Mfrs. Ass'n v. ICC, 567 F.2d 994, 1005 (D.C.Cir.1977); Microwave Communications v. FCC, 515 F.2d 385, 389 & n. 24 (D.C.Cir.1974).
 
 
 16
 The Commission adopted the use of opportunity cost in railroad abandonments in Abandonment of Railroad Lines, supra, 360 I.C.C. 571. In Texas & P. Ry., 363 I.C.C. 666 (1980), the Commission computed opportunity cost using the net liquidation value of the line. This methodology was applied to abandonment decisions generally in Illinois C.G.R.R., supra, 363 I.C.C. 729, 732 ("an appropriate method of calculating opportunity costs is to multiply an 'adequate' rate of return against the line's net liquidation value").
 
 
 17
 By Notice published in 47 Fed.Reg. 43,747 (1982) (the "1982 Notice"), the Commission proposed regulations to codify both the use of opportunity cost and the methodology for calculating opportunity cost. The 1982 Notice referred specifically to the use of net liquidation value as the value for calculating opportunity cost. 47 Fed.Reg. at 43,750 ("In [Texas & P. Ry.] we concluded that opportunity costs could be determined by applying the railroad's cost of capital to the net liquidation value of the involved line."). The Commission codified these regulations at 49 C.F.R. Sec. 1152.32(p) in Ex Parte No. 274 (Sub-No. 5), Revision of Abandonment Regulations (49 CFR 1152), 367 I.C.C. 831 (1983). Opportunity cost, according to the regulations, are to be calculated "in accordance with the methodology approved by the Commission in abandonment adjudications...." 49 C.F.R. Sec. 1152.32(p) (1984).
 
 
 18
 The 1982 Notice and numerous Commission decisions both before and since make abundantly clear that the method approved by the Commission for calculating opportunity cost uses net liquidation value. 47 Fed.Reg. 43,750 (1982); Abandonment of Railroad Lines, supra, 360 I.C.C. 571; Texas & P. Ry., supra, 363 I.C.C. 666; Illinois C.G.R.R., supra, 363 I.C.C. 729; Ex Parte No. 274 (Sub-No. 3A), Abandonment of Railroad Lines--Use of Opportunity Costs, 365 I.C.C. 902 (1982); Revision of Abandonment Regulations, supra, 367 I.C.C. 831; Ex Parte No. 274 (Sub-No. 3C), Abandonment of Railroad Lines--Use of Opportunity Costs, 1 I.C.C.2d 203 (1984); Ex Parte No. 274 (Sub-No. 3D), Abandonment of Rail Lines--Use of Opportunity Costs, 3 I.C.C.2d 810 (1987); Ex Parte No. 274 (Sub-No. 3E), Abandonment of Rail Lines--Use of Opportunity Costs, 4 I.C.C.2d 92 (1987). The calculation of opportunity cost using NLV subsequently was codified explicitly at 49 C.F.R. Secs. 1152.32(p) & 1152.34 (1988). Ex Parte No. 274 (Sub-No. 11), Abandonment Regulations--Costing, 3 I.C.C.2d 340, 52 Fed.Reg. 2705, 2709 (1987) (Notice of Proposed Rulemaking issued at 50 Fed.Reg. 3002 (1985)).
 
 
 19
 Massachusetts also argues that the Commission's response to the merits of Massachusetts' comments forecloses the Commission from now asserting that Massachusetts' objections are beyond the scope of the rulemaking. This Court has recognized that there is an exception to the sixty-day rule when an agency reopens an issue. Association of Amn. R.R. v. ICC, 846 F.2d 1465, 1473 (D.C.Cir.1988); Ohio v. EPA, 838 F.2d 1325, 1328 (D.C.Cir.1988). Here, however, there has been no such reopening. The agency did not hold out the unchanged calculation of value as a proposed regulation; it did not explain the unchanged procedure; it did not solicit comment on the substance of the value calculation; and it responded to Massachusetts' comments only to deny them as inconsistent with long established practice and policy and summarily to find them antithetical to established goals. Abandonment Regulations, supra, 5 I.C.C.2d 123, slip op. at 10. Massachusetts characterizes the Commission's contention that Massachusetts' comments were beyond the scope of the rulemaking as post hoc rationalization because the Commission responded to those comments. This argument is squarely addressed by our opinion in American Iron & Steel Inst. v. EPA, 886 F.2d 390, 398 (D.C.Cir.1989).
 
 
 20
 The "reopening" rule of Ohio v. EPA is not a license for bootstrap procedures by which petitioners can comment on matters other than those actually at issue, goad an agency into a reply, and then sue on the grounds that the agency had re-opened the issue. To so read Ohio v. EPA would undermine congressional efforts to secure prompt and final review of agency decisions.
 
 
 21
 The Commission's perfunctory rejection of Massachusetts' extraneous comments does not confer upon Massachusetts the right to challenge longstanding regulations that the Commission did not open for renewed discussion.
 
 
 22
 Massachusetts also argues that this Court should review the use of NLV because the valuation method and the cost of capital calculation are inextricably intertwined. Rather than convincing us that we should review the asset value component, this argument demonstrates that Massachusetts is attempting to challenge the notion of opportunity cost at its root. The Commission defined " 'opportunity cost' as 'the real economic loss an entity experiences when it must forego some other, more profitable use of its resources.' " Abandonment of Railroad Lines, supra, 360 I.C.C. at 571 (emphasis added). The Commission's decisions recognize the requirement that economic loss be measured with actual not historical (except as they approximate actual) values. Massachusetts attempts in its response to a call for comments on accounting procedures to couch a fundamental objection to economic concepts in accounting terms. Massachusetts objects to the accounting methodologies by which opportunity cost are calculated because it objects to the policy embodied in the use of opportunity cost. By proposing accounting changes likely to produce the policy results it desires--consistency with revenue adequacy standards--Massachusetts essentially suggests the use of accounting procedures that would calculate under the rubric of opportunity cost something entirely different. Whatever the merits of its fundamental objection to opportunity cost, the time to raise that challenge has long passed.
 
 B. Inflation
 
 23
 Massachusetts' complaint that the use of the nominal cost of capital improperly double counts for inflation is arguably not wholly derivative of its objection to the use of net liquidation value. The thrust of its double-count argument, however, is factually in error. A portion of the nominal cost of capital compensates the capital provider for its expectation that its money will be returned in the future in dollars that have lost value due to the effects of inflation. This inflation factor, however, is the result of expected future inflation. Although the Commission and the RAPB have identified and adopted measures intended to solve an inflation double counting problem, it is not that problem which Massachusetts identifies. Rather, Massachusetts asserts that because NLV measures the appreciated value of assets--due in part to the effects of past inflation--the use of the nominal cost of capital will count twice for inflation, once in the value and once again in the cost of capital. Massachusetts ignores the fact that the value component incorporates past inflation and the cost of capital incorporates expected future inflation. The past and the future are not redundant. Massachusetts' asserted double count is nonexistent.
 
 
 24
 The Commission has adjusted opportunity cost in order to take account of a double count of future inflation created by a combination of use of the nominal cost of capital and continued holding of the assets by the railroad. This double count arises because in addition to the expected future inflation built into the nominal cost of capital, the railroad will also realize appreciation in the assets themselves due to inflation because it will continue to hold the assets during the period for which opportunity cost has been calculated. Thus, if this problem is not addressed, the railroad, in essence, gets to have its cake and eat it too. The rules adopted remove expected one-year holding gains and consequently count only once for inflation--in the nominal cost of capital.
 
 
 25
 Massachusetts objects that gain is removed for only one year. This objection, first, is a restatement of its objection to use of current appreciated asset values, and, second, shows a misunderstanding of the double count. The cost of capital calculation uses an annual rate. It follows that it is entirely appropriate for the calculation to remove the holding gain for one year.
 
 
 26
 Finally, the testimony submitted by Massachusetts states that the Commission's conception of the inflation issue is "essentially correct." According to Massachusetts' economist, use of the real cost of capital rather than the nominal cost with an allowance for holding gains is an issue of "theoretical accuracy versus practical difficulties of measurement." Verified Statement of William B. Tye at 36-38, Joint Appendix at 58-60. This is precisely the sort of determination committed to the Commission. 49 U.S.C. Sec. 11,166. Massachusetts has asserted, as it must if it is to prevail, that the action of the ICC in adopting this measure of the cost of capital was arbitrary and capricious or irrational. Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Automobile Ins. Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). By its own testimony Massachusetts has established that this is not so.
 
 
 27
 C. The Role of the Railroad Accounting Principles Board
 
 
 28
 Petitioner Simmons challenges the role played by the RAPB in the promulgation of these rules. Simmons asserts that the RAPB has acted beyond its statutory authority in proposing general rules applicable to abandonments. However, Simmons' claim is meritless as the ICC in promulgating these regulations did not purport to act under the authority granted the RAPB, but rather under its own independent authority to adopt rules for railroad abandonments. 49 U.S.C. Sec. 11,166 ("the Interstate Commerce Commission may promulgate reasonable rules for rail carriers providing transportation subject to the jurisdiction of the Commission ... prescribing expense and revenue accounting and reporting requirements...."). Because the ICC acted under its own authority in promulgating these rules, we have no need to consider the role of the RAPB in reference to rules covering abandonments.
 
 III. CONCLUSION
 
 29
 In summary, we reject as untimely Massachusetts' attempts to reopen discussion of the valuation portion of the opportunity cost calculation. We find that Massachusetts' objections to the Commission's handling of the effects of inflation on the opportunity cost calculation are meritless and that the rules adopted are neither arbitrary and capricious nor irrational. Finally, because the ICC acted pursuant to its own authority to promulgate accounting rules, we dismiss as meritless petitioner Simmons' objections to the role of the RAPB.
 
 
 30
 The petitions for review are denied.